UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YVONNE A'RAE LAISURE-RADKE, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>PAR PHARMACEUTICAL, INC., *et al.*, <br><br>　　　　Defendants. | CASE NO. C03-3654RSM <br><br> ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF GEORGE S. GLASS, M.D., P.A., AND JOSEPH GLENMULLEN, M.D. |

## **I.  INTRODUCTION**

This matter comes before the Court on defendants' Motion to Exclude the Testimony of George S. Glass, M.D., P.A., and Joseph Glenmullen, M.D. (Dkt. #116). Defendants ask this Court to bar plaintiffs from utilizing during the course of trial or offering into evidence the testimony of Drs. Glass and Glenmullen on the basis that their testimony and opinions are not based on a reliable foundation, and because they lack the requisite qualifications to render such opinions.

Plaintiff opposes the motion, asserting that her experts are well qualified by their knowledge, skill, experience, training and education, to render opinions in this case. (Dkt. #130, Attachment 21).

For the reasons set forth below, the Court agrees with plaintiff and DENIES defendants' motion to exclude.

ORDER
PAGE - 1

## II. DISCUSSION

**A. Background**

Plaintiff, Yvonne A'Rae Laisure-Radke, brings this lawsuit on behalf of herself and as individual representative of her husband's estate. She alleges that her husband, Douglas Radke, committed suicide while under the influence of the antidepressant drug fluoxetine, which is the generic version of Eli Lilly's Prozac. Defendants manufacture, distribute and market the generic drug. Plaintiff essentially asserts that defendants were aware of an increased risk of suicidality in users of the class of antidepressant drugs within which Fluoxetine lies, known as selective serotonin reuptake inhibitors ("SSRIs"), well before the death of Ms. Laisure-Radke's husband, and did not adequately warn of that risk.

Plaintiff has designated two expert witnesses, Dr. Glass and Dr. Glenmullen. Both are expected to testify as to the association between fluoxetine and akathisia, and the association between akathisia and suicidality.[1] It appears that Dr. Glenmullen will provide opinions on both general and specific causation, and Dr. Glass will provide opinions on specific causation.

Defendants argue that neither Dr. Glass nor Dr. Glenmullen are qualified to render these opinions, and, in any event, their opinions are not based on generally accepted methodology. Thus, defendants ask this Court to exclude both doctors as expert witnesses.

**B. Expert Testimony**

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts

---

[1] Akathisia is a condition described as inner feelings of restlessness along with physical symptoms of agitation. Some experts have testified that people view death as a welcome result when akathisia is present with other mood disorders.

ORDER
PAGE - 2

> or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the United States Supreme Court explained that in considering the admission of expert scientific testimony in a federal trial, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The court went on to instruct that the trial court should first look to Rule 702, which mandates that an expert's testimony must be "scientific knowledge . . . derived by the scientific method . . . [and] supported by appropriate validation." *Id.* at 589-90.

As guidance, the Supreme Court discussed four factors it deemed relevant to the determination of whether certain expert testimony should be admitted:

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. . . . Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication. . . . Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation. . . . Finally, 'general acceptance' can yet have a bearing on the inquiry. A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.' Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism.
> . . .
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity -- and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

Daubert, 509 U.S. at 595 (citations omitted).

Furthermore, the *Daubert* court instructed district judges to be aware of other evidentiary rules in assessing expert testimony. For example, Rule 703 allows experts to rely upon facts or data that aren't admissible into evidence when forming their opinions or inferences, so long as the facts or data are of a type reasonably relied on by experts in the particular field. Fed. R. Evid. 703.

ORDER
PAGE - 3

In the instant case, defendants first examine the qualifications of the proffered doctors. Defendants note that Dr. Glenmullen has never participated in, designed, or written the protocol for a controlled clinical trial or any scientific study of either a psychoactive or any other drug; he has never served as the principal investigator for any scientific study and has never administered any psychiatric or psychological rating scales or testing instruments in any clinical study; he has never participated in, designed or written a protocol for any epidemiological or large group study of a psychoactive drug or of any drug; he has not performed clinical or laboratory research regarding potential side effects associated with any SSRI antidepressant, including fluoxetine; he has never published a peer-reviewed article or other writing on SSRI antidepressants, antidepressants in general, suicidality or any aspect of medicine; he has never written or published a paper, study, or article in any scientific or medical journal on any subject; he has never served as a peer-reviewer for any medical or scientific journal; he does not belong to any professional organization which focuses on the study of psychoactive drugs or any other relevant professional organization; and he is not a researcher or scientist. Defendants argue that these deficiencies preclude Dr. Glenmullen from testifying as an expert in this case.

Plaintiff responds that Dr. Glenmullen's extensive real life experience in treating patients, his Board Certification in Psychiatry and Neurology, his forensic training and academic appointments, provide the requisite qualifications. Plaintiff notes that Dr. Glenmullen is a Harvard-trained psychiatrist who has practiced psychopharmacology and psychiatry at Harvard University for more than two decades, he has prescribed SSRIs, seen the side affects about which he testifies, and has treated those side affects. Dr. Glenmullen has also written books examining Prozac-induced suicide. Plaintiff also notes that defendants have continuously criticized Dr. Glenmullen since he wrote and published his book "Prozac Backlash."

The Court finds plaintiff persuasive. There is no question that experience-based expert testimony is admissible. Indeed the Ninth Circuit Court of Appeals has held that any allegations of lack of particularized expertise, such as those raised by defendants above, goes to the weight accorded to

the testimony, not its admissibility. *United States v. Garcia*, 7 F. 3d 885, 890 (9th Cir. 1993). Therefore, the Court does not agree with defendants that Dr. Glenmullen is not properly qualified to testify as an expert witness in this case.

Similarly, the Court finds that Dr. Glass is also qualified to testify as an expert in this case. While defendants raise essentially the same deficiencies in qualifications as those raised against Dr. Glenmullen, the Court notes that Dr. Glass has more than 30 years of experience treating patients, he has board certifications in both Psychiatry and Addictionology, he is a Yale-educated physician and psychiatrist, and he has prescribed SSRIs, seen the side affects about which he testifies, and has treated those side affects.

However, while the Court agrees that both doctors may be qualified to testify as expert witnesses, the U.S. Supreme Court has directed that such experience-based testimony is still subject to the *Daubert* test for reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Thus, the Court now turns to such an analysis.

In *Kumho Tire Co.*, the Supreme Court provided district courts with guidance as to what to consider when determining the reliability of an expert witness's testimony, emphasizing that such an analysis is a flexible one:

> The petitioners ask more specifically whether a trial judge determining the 'admissibility of an engineering expert's testimony' may consider several more specific factors that *Daubert* said might 'bear on' a judge's gate-keeping determination. These factors include:
>
> -- Whether a 'theory or technique . . . can be (and has been) tested;
>
> -- Whether it 'has been subjected to peer review and publication';
>
> -- Whether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and
>
> -- Whether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'
>
> Emphasizing the word 'may' in the question, we answer that question yes.

ORDER
PAGE - 5

> Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise. Our emphasis on the word 'may' thus reflects *Daubert's* description of the Rule 702 inquiry as 'a flexible one.' *Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test.' And *Daubert* adds that the gatekeeping inquiry must be '"tied to the facts"' of a particular 'case.' We agree with the Solicitor General that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.' The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue. *Daubert* itself is not to the contrary. It made clear that its list of factors was meant to be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged. It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist. Nor, on the other hand, does the presence of *Daubert's* general acceptance factor help show that an expert's testimony is reliable where the discipline itself lacks reliability, as, for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy.

*Kumho Tire Co.*, 526 U.S. at 151 (citations omitted).

In the instant case, as noted above, Dr. Glenmullen is a psychiatrist who has treated depressed patients for more than 20 years and has prescribed fluoxetine and other antidepressants on a regular basis. Based on numerous published case reports, peer-reviewed articles and studies, his own research for his two books "Prozac Backlash" and "The Antidepressant Solution," and his own observations of the case materials, Dr. Glenmullen intends to testify that Douglas Radke's death was fluoxetine-induced suicide. He also intends to testify as to the general causation between SSRIs and suicide by focusing on the relationship between fluoxetine and akathisia, and the relationship between akathisia and suicidality.

Defendants challenge Dr. Glenmullen's method of "connecting the dots" between the intermediary step of akathisia and suicidality, and argue that this is not a generally accepted methodology to assess an alleged causal relationship between fluoxetine and suicide. The Court disagrees.

ORDER
PAGE - 6

1    While the Court recognizes that Dr. Glenmullen's opinions are not based on his own peer
2 reviewed publications or studies that he conducted himself, the Court acknowledges that his findings
3 are based on his extensive experience as a clinician prescribing antidepressants, including fluoxetine,
4 and his extensive review of the materials, reports, and other relevant materials of this case. *See*
5 *generally*, *McKendall v. Crown Control Corp.*, 122 F.3d 803 (9th Cir. 1997) (admitting, without
6 applying the *Daubert* standard, expert testimony of an engineer who had over thirty years of experience
7 and extensive expertise). In addition, Dr. Glenmullen's opinion is supported by the Jick study[2] and
8 numerous other medical articles to which he cites in his expert report that suggest a causal connection
9 between fluoxetine and suicide. Accordingly, the Court finds that Dr. Glenmullen's opinions are
10 adequately supported by scientific theory and factual bases.

11    Likewise, the Court also finds that Dr. Glenmullen's proposed testimony would aid the trier of
12 fact in this case. Dr. Glenmullen's experience as a psychiatrist, along with the fact that he has
13 prescribed fluoxetine and treated the side effects, demonstrates his knowledge about SSRIs and their
14 effects on patients in a real world setting. Similarly, as highlighted above, his review of the Jick study
15 and numerous other medical journals supports his causation theory. As such, his proposed testimony
16 will assist the jury in forming its own decisions pertaining to causation and liability. Accordingly, the
17 Court finds Dr. Glenmullen's testimony admissible under *Daubert*. For the same reasons, the Court
18 finds that Dr. Glass's testimony is also admissible under *Daubert*. Thus, the Court declines to exclude
19 either doctor as an expert witness in this case.

20    This is not to say that defendants are without other recourse for challenging the expert

---

[2] Jick, S., *Antidepressants and Suicide*, Br. Med. J. 1995; 310:215-18. The Jick study followed 172,598 people who had been taking at least one of ten antidepressants, and determined which of them committed suicide. One of the ten drugs was fluoxetine. The results showed that 143 of the subjects committed suicide. The researchers analyzed the data for each drug in different respects such as effect of suicidal history and use of antidepressants, effect of time from first prescription to suicide, and effect of depressive illness. They also compared each drug with Dothiepin (the most commonly used antidepressant) as an arbitrary reference point for statistical analysis.

ORDER
PAGE - 7

1  testimony at issue in this motion.  The Court reminds defendants that plaintiff's expert testimony

2  remains subject to the traditional "safeguards" present in all litigated cases.  *Daubert*, 509 U.S. at 596.

3  As the Supreme Court explained:

> [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.  Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, and likewise to grant summary judgment.  These conventional devices . . . are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.

*Id.* (citations omitted).

### III.  CONCLUSION

Having reviewed defendants' motion, plaintiff's response, defendants' reply, the numerous exhibits and declarations in support of those briefs, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants' Motion to Exclude the Testimony of Drs. Glenmullen and Glass (Dkt. #116) is DENIED.

(2)  The Clerk shall forward a copy of this Order to all counsel of record.

DATED this _____ day of March 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8